THE QUINCY OIL COMPANY *vs.* NEW ENGLAND ROAD MACHINERY COMPANY & others.

Suffolk. December 1, 1930. — February 3, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Real or Personal Property. Sale,* Conditional. *Evidence,* Competency, Book entries, Of payment. *Mortgage,* Of personal property: recording. *Assignment. Corporation,* Officers and agents. *Equity Pleading and Practice,* Bill.

A mortgage of land, duly recorded in the registry of deeds but not recorded under the provisions of G. L. c. 255, § 1, as amended by St. 1921, c. 233, included machinery which was used in connection with the operation of a sand and gravel pit. The machinery, partly before and partly after the execution of the mortgage, had been delivered to the mortgagor as lessee under a lease and as vendee under a later contract of conditional sale, each of which stipulated that title was not to pass until all requirements of the lease and the sale agreement had been met, and had been placed upon the land in such a manner that it could be removed readily without injury thereto. There was no intent to make the machinery part of the realty. The lease was retained by the vendor and the contract of conditional sale was assigned by him to a discount corporation as security for payment by the vendor of a note made by the vendee, which the vendor indorsed to the corporation. The lease and the contract of conditional sale both remained in force. The discount corporation received payment in full of the note, partly from the vendee and partly from the vendor, the indorser, and redelivered the contract of conditional sale to the vendor, who was not repaid by the vendee. The mortgagee thereafter foreclosed and purchased the land at the foreclosure sale; and commenced a suit in equity against the vendor, alleging that the machinery had become a part of the realty and that the vendor had been paid in

full, and praying that the vendor be enjoined from removing the machinery from the land and for general relief. Thereafter the discount corporation, by its treasurer, gave an assignment in writing to the vendor of all its interest in the contract of conditional sale and in the machinery. There was no evidence of the authority of the treasurer to do this. A master found that the machinery always had remained personal property and that there was a balance in a certain sum due the vendor from the vendee, the mortgagor. A final decree was entered dismissing the bill. *Held*, that

(1) There was no error of law in the finding that the machinery remained personalty;

(2) Certain evidence as to the books of the discount corporation and as to the balance due on the account with the mortgagor properly was admitted, since it was relevant on the issue of the title to the machinery and the issue of payment to the vendor;

(3) The mortgage, so far as it concerned the machinery, and the mortgagee's possession thereof, were valid only as between the mortgagor and mortgagee, and gave the mortgagee no right as against the vendor and his assigns;

(4) By reason of breach of the lease, the vendor had a right to immediate possession of the machinery before the bill was filed;

(5) At that time the vendor also had such right under the contract of conditional sale: the assignment thereof to the discount corporation being merely for security, he continued to have an interest in the property, and, furthermore, he had become entitled to a reassignment;

(6) The circumstance, that the formal reassignment of the contract of conditional sale was not given until after the filing of the bill, was immaterial;

(7) In the circumstances, the treasurer of the discount corporation had authority to give the reassignment in its behalf;

(8) Title and superior right to the machinery was in the vendor;

(9) Under the prayers of the bill and in the circumstances, the mortgagee was not entitled to relief by way of redemption on an accounting;

(10) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on May 17, 1929, and afterwards amended, described in the opinion.

The suit was referred to a master and later was recommitted to him. Material facts found by him are stated in the opinion. By order of *Bishop*, J., there were entered an interlocutory decree confirming the master's report and supplemental report, and a final decree dismissing the bill. The plaintiff appealed from both decrees.

*G. W. Abele*, for the plaintiff.

*L. E. Thayer*, for the defendants.

WAIT, J. The plaintiff appeals from a decree confirming the report and supplementary report of a master, and from a decree adjudging that certain machinery is personal property, title to which is in the defendant New England Road Machinery Company, and dismissing its bill as against that defendant with costs. The bill was brought against the machinery company, Anton B. Nelson, May R. Nelson, his wife, and Samuel Barron, Jr., trustee in bankruptcy of Anton B. Nelson, as defendants. It was filed May 17, 1929, and alleged, in substance, that Anton B. Nelson and Nels O. Nelson, copartners as Nelson Bros., and May R. Nelson conveyed in mortgage to the plaintiff on November 15, 1927, two parcels of land in Braintree, "together with all fixtures and machinery located thereon and used in connection with the operation of the sand and gravel pit on parcel 2 above described"; that, on March 4, 1929, the plaintiff entered upon the premises and took possession of the property, foreclosed its mortgage by sale on May 14, 1929, and took title to itself by deed recorded May 21, 1929. It alleged that the defendant machinery company threatened to take possession of certain machinery described in the bill and to remove it, claiming to be the owner by virtue of written agreements and leases executed by Nelson Bros. This machinery, it alleged, was so affixed to the premises as to be part of the realty and no longer personal property. It further alleged that the machinery company had no right, title or interest in the machinery; and, by amendment, that it had been paid in full for any machinery which might be found to have remained as personal property. It set out that Nels O. Nelson had died, and that Anton had been adjudicated bankrupt and the defendant Barron had been made his trustee. It prayed that the machinery company be restrained from interfering with or removing the machinery, and for general relief. All the defendants answered. The Nelsons disclaimed any interest in the personal property, and took no part in the hearing before the master. The machinery company set up that

all the personal property claimed in the bill had been delivered by it to Nelson Bros. upon leases and conditional sales agreements which stipulated that it should not be affixed to the realty but should remain personal property, and that title should remain in the vendor. It claimed the right to immediate possession.

The master found that the machinery had been delivered by the machinery company to Nelson Bros. upon leases and conditional sales, title not to pass until all requirements of the leases and sales agreements had been met, the property not to be affixed to the realty nor to become real estate. A part had been delivered after the execution of the mortgage to the plaintiff, which had known nothing of the arrangements as to title of the machinery. Nels O. Nelson died before April 2, 1929. Anton became surviving partner and on April 2, 1929, was adjudicated bankrupt. No bankruptcy proceedings by or against the firm had been instituted. Barron was made trustee for Anton B. Nelson and claimed rights in the property. The master found that the machinery had been so placed upon the premises that it could readily be removed without injury to the realty; that, in placing it, there had been no intent to make it part of the realty or thereby to enhance permanently the value of the real estate, and that it was at all times and had remained personal property. We need not recite the details of the methods used in the construction to make the machinery an integral part of the stone crushing and screening plant on the second parcel conveyed in mortgage. There is no error of law in the finding that the machinery has remained personal property. *Hubbell* v. *East Cambridge Five Cents Savings Bank,* 132 Mass. 447. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519. *Stone* v. *Livingston,* 222 Mass. 192.

Evidence in respect to the life of crushing and screening machinery, to the custom of moving such machinery about in a gravel pit and of removing it to other pits when one is exhausted, and to the custom of " trading

in " old for new machinery, was competent on the issue
whether what was claimed had become real or had re-
mained personal property. We understand that the
plaintiff does not now press the exceptions to the mas-
ter's report based upon the admission of this evidence.

The mortgage deed was duly recorded in the registry
of deeds for Norfolk County, but no record was ever
made to meet the requirements of G. L. c. 255, § 1, as
amended by St. 1921, c. 233, with regard to mortgages
of personal property. So far as personal property is
concerned the conveyance to the plaintiff was effectual
only between the parties.

The account between Nelson Bros. and the machinery
company extended from September 23, 1924, to May 21,
1929. There was no special account in which debits and
credits were entered with reference to any specific trans-
action of specific conditional sale agreement. Payments
were entered on one side, charges on the other. There
was no evidence of any request by Nelson Bros. that a par-
ticular payment be appropriated to any specific charge.
The master was unable to determine what amount re-
mained unpaid with reference to any particular piece of
machinery or with reference to any particular transaction;
but he found a balance of $5,453.19 remaining due, made
up of balances due on all the machinery specified in
the bill of complaint, with the repair parts furnished
from time to time in connection with it, plus interest
charges incidental to carrying notes and trade acceptances
referred to in the leases and conditional sales agree-
ments made in connection with deliveries of the machin-
ery. Both leases and conditional sales agreements were
made in connection with deliveries, the leases generally
somewhat earlier in date than the conditional sales
agreements with reference to the same items. The leases
were retained by the seller. The conditional sales agree-
ments were assigned as security for payment by the seller
of notes or trade acceptances made or accepted by Nelson
Bros. which it indorsed to the Merchants Discount Com-
pany or to the Congress Finance Corporation. Payments

were made from time to time by Nelson Bros. to these corporations while they held the notes. The master admitted evidence that the books of the Congress Finance Corporation showed that on a note due August 20, 1927, for $476.56 no payment was made; and found as a fact no payment was made. The plaintiff contended that the conditional sales agreements were substituted for the leases and superseded them. The master, however, found that there was no substitution; that both remained in force, the machinery company holding the lease, its indorsee of notes or trade acceptance holding the conditional sales agreement as security for its discounts. No evidence of sale or reassignment of the conditional sales contracts to the machinery company was introduced before the filing of the first report of the master. The plaintiff filed objections which became exceptions to the report. Hearing was had thereon, on a motion of the plaintiff to recommit, which does not appear in the record other than by reference in the interlocutory decree, and on a motion of the defendant New England Road Machinery Company to recommit. By the decree the report was recommitted for hearing further evidence " in reference to any sale, assignment or reassignment by or to the respondent New England Road Machinery Company, of the contracts of conditional sale referred to in the report of the master and also any further evidence in reference to any payments which may have been made on said contract of conditional sale." No appeal from this decree appears in the record before us. In the supplementary report, to which no objections or exceptions were filed, the master found that upon a trade acceptance, dated April 12, 1928, attached to a conditional sales contract for part of the machinery claimed in the bill, which had been discounted by the Merchants Discount Company, $1,584.12 of the $3,150 due had been paid by the New England Road Machinery Company, including the final payment. The remainder had been paid by Nelson Bros., who also paid $527.41 in cash to the machinery company and gave a note for the balance. This note was never

paid. The master found that $732.90 paid by the machinery company had never been repaid by Nelson Bros. and that the machinery company had an interest of that amount plus interest from October 17, 1928, in the document. The Merchants Discount Company redelivered the document to the machine company on receiving its payment, but it gave no reassignment (other than redelivery) until October 10, 1929, when, without further consideration, its treasurer, on its behalf, gave a written assignment under its seal to the machinery company of all its right, title and interest in conditional sales agreements and the property therein described between the New England Road Machinery Company and Nelson Bros. without recourse to the Merchants Discount Company. There was no evidence of authority to the treasurer to execute and deliver this assignment, other than appeared in the writing. No interest remained in the Merchants Discount Company after the receipt of the payment on October 18, 1928. The master further found that a trade acceptance dated August 20, 1926, accepted by Nelson Bros., attached to a conditional sales contract for part of the machinery claimed in the bill, had been discounted for the machinery company by the Congress Finance Corporation. A payment of the last instalment thereon due August 20, 1927, for $476.56 was never made by Nelson Bros. The president of the machinery company purchased the assets of the Congress Finance company, which included this acceptance, in December of 1928, and turned the acceptance over to the machinery company which debited Nelson Bros. with $476.56 and credited the Congress Finance company with a like amount on its books. The $476.56 was never paid by the machinery company to the finance company. A written assignment like that from the Merchants Discount Company was executed by the Congress Finance Corporation by its treasurer to the machinery company. No consideration then passed, but the assignment bore the corporation's seal. There was no evidence of authority to the treasurer to execute and deliver the instrument, other than appeared in it. About

October 17, 1929, the machinery company notified the plaintiff of the receipt of these assignments. On the next day, the plaintiff notified the machinery company that it had acquired all right, title and interest of Nelson Bros. to the property described in the conditional sales agreements, and requested an account so that it could pay whatever was necessary to redeem the property if retaken. On October 21, the machinery company notified the plaintiff that a statement had been furnished before hearings began showing $5,453.19 balance due; and stated in the notice, that interest and attorneys' fees of the litigation would be required in addition, if there was any right to redeem. No amendments were made in the pleadings. After hearing on confirmation of the reports, the exceptions to the report were overruled, both reports were confirmed by interlocutory decree, and, on the same day, the decree was entered adjudging that the property sought was personal property, that title was in the New England Road Machinery Company, and dismissing the bill as to that defendant.

We find no error. The evidence with regard to the books of the Congress Finance Corporation, and the balance due on the general account with Nelson Bros. was competent on the issue of title, and, in especial, on the issue of payment presented by the amendment filed before hearings began. All the exceptions to the report argued have been dealt with. They properly were overruled. The original possession of the plaintiff as between itself and the Nelsons was legal, see *Hurnanen* v. *Nicksa,* 228 Mass. 346, 350, and cases cited; but it gave no right against the vendor or its assigns, since no title to the machinery at any time passed to the Nelsons. The property never was attached to the realty so that it lost its character as personal property. The mortgage was never so recorded as to give it validity in respect to the personal property conveyed. *Leahy* v. *George,* 273 Mass. 130. The vendor before the bill was filed had repossessed itself of the right to take possession for breach of the terms of the leases as well as of the contracts of conditional sale. By retain-

ing the leases it retained an immediate right to repossession on breach of either lease or conditional contract of sale, which was good against the lessee, although it may not have been against one to whom it had assigned the contract of sale. Such assignments as the vendor made were as security. It had an interest in the property until the Nelsons acquired title. The situation differs from that disclosed in *Lynn Morris Plan Co.* v. *Gordon,* 251 Mass. 323, and *Briskin* v. *Packard Motor Car Co. of New York,* 269 Mass. 394, 398. There was no change in the real state of accounts between vendor and its assigns after the bill was filed. When the bill was filed the vendor was entitled to reassignment of the contracts of conditional sale. The time of taking them was immaterial. A plaintiff must succeed or fail on the strength of his own title, not on the weakness of the defendants. Here, in equity, the superior right is that of the machinery company. The treasurers were, we think, authorized by their office to perform what were merely ministerial acts in the circumstances shown. The right of the vendor to have the reassignments was complete. No obligation was cast upon the corporation by what was done and no loss was suffered. We have not discussed the relations of the president of the machinery company with the Congress Finance Corporation because it seems immaterial.

The bill was framed to restrain removal of the crushing and screening machinery. It did not seek redemption on an accounting. It has not been amended. Until possession is taken no absolute occasion for a bill to redeem exists. There has been no such possession. We do not think a decree for redemption, if obtainable in any event, is within the prayer for general relief of this bill now before us.

*Decrees affirmed.*